**TULSA TRIBUNE COMPANY, a corporation, Petitioner,**

v.

**The OKLAHOMA HORSE RACING COMMISSION and the Honorable Leamon Freeman, District Judge of the District Court of Oklahoma County, Oklahoma, Respondents.**

No. 65942.

Supreme Court of Oklahoma.

May 28, 1986.

Rehearing Denied May 6, 1987.

Gable & Gotwals by James M. Sturdivant and John Henry Rule, Tulsa, for petitioner.

Michael C. Turpen, Atty. Gen., Neal Leader, Asst. Atty. Gen., Chief, Civil Div.,

Oklahoma City, for respondent Okl. Horse Racing Com'n.

Sturm, Kessler & Brawner by Larry C. Brawner, Oklahoma City, for respondent real party in interest Okl. Racing Associates.

LAVENDER, Justice:

Petitioner, Tulsa Tribune Company, the publisher of a newspaper in Tulsa, Oklahoma, brought this action requesting the assumption of original jurisdiction by this Court and the issuance of writs of prohibition and mandamus. The requested writ of prohibition would prohibit respondent, the Honorable Leamon Freeman, from enforcing a "protective order" requiring certain information in the hands of respondent Oklahoma Horse Racing Commission (Commission) to be kept from the public, including petitioner. The requested writ of mandamus would require respondent Commission to release the information to petitioner under the terms of the Oklahoma Open Records Act.[1]

The information which has become the focus of this dispute concerns the financial holdings and liabilities of the three individuals comprising the partnership Oklahoma Racing Associates. These individuals are Edward J. DeBartolo, Edward J. DeBartolo, Jr., and Marie Denise DeBartolo York. The information, in the form of personal financial statements, was submitted to the Director of the Law Enforcement Division of the Commission "in connection with [Oklahoma Racing Associates'] proposed application to the Oklahoma Horse Racing Commission to secure a pari-mutuel racing permit." [2]

On December 2, 1985, petitioner submitted a written request to the Commission under the provisions of the Oklahoma Open Records Act[3] seeking to obtain for public inspection the submitted personal financial statements of the DeBartolos. The Executive Director of the Commission communicated the fact of this request to the Office of the Attorney General, acting as counsel for the Commission, and to counsel for Oklahoma Racing Associates.

On the following day Oklahoma Racing Associates commenced an action in Oklahoma County District Court against the Commission, seeking a "protective order" from the court to prevent the release of the information to the public. An order to this effect was entered on this same date by respondent district judge. In this order it was found that the information sought was subject to the Open Records Act. However, it was also found that the release of the information would be injurious to the plaintiff, and for that reason the Commission was ordered not to disclose it to the public.

Subsequently, the Commission, relying on the district judge's "protective order," refused to honor petitioner's written request for disclosure. Petitioner, alleging that under these facts it has no adequate alternative relief, has petitioned this Court to accept original jurisdiction and to act in this matter. Upon review of this case we find the assumption of original jurisdiction to be appropriate.

I.

■ A writ of prohibition may be properly issued where an inferior tribunal has presumed, or is presuming, to exercise judicial power not granted by law.[4] Our review of this case indicates that respondent district judge lacked legal authority to enter the challenged "protective order."

■ The new Oklahoma Open Records Act provides, at 51 O.S.Supp. 1985 § 24A.5, that each public body subject to the act shall be responsible for making records available to the public. Section 24A.5 also provides that exempt material may be de-

---

1. 51 O.S.Supp. 1985 §§ 24A.1 through 24A.18.

2. Letter from The Edward J. DeBartolo Corporation to Director of Law Enforcement of the Oklahoma Horse Racing Commission of July 29, 1985. Petitioner's Exhibit 3 to Application (Appendix).

3. Supra, note 1.

4. *Powell v. Seay,* 553 P.2d 161 (Okla.1976).

leted from the records made available by the public body. The public body is also authorized to designate persons who are authorized to release records for inspection. Section 24A.17(B) subsequently authorizes a person who has been denied access to a public record to bring suit for injunctive and/or declaratory relief against the public body. These provisions clearly place the authority for making the initial determination as to what materials are exempt from disclosure upon the public body having possession of the records..

█ In the present case the written application of petitioner to respondent Commission seeking the release of the requested information invoked the Commission's authority and responsibility to determine whether an exemption applied to prevent the disclosure of all, or part of, the requested information. Respondent district judge's entry of the "protective order" in this case clearly usurped this legislatively imposed authority. Prohibition clearly lies to prohibit a district court from proceeding in a matter already properly before another office or tribunal.[5]

█ Oklahoma Racing Associates, responding as a real party in interest in this case, argues that the "protective order" is valid and authorized by the Oklahoma Discovery Code.[6] Particularly, Oklahoma Racing Associates relies on 12 O.S.Supp. 1982 § 3203(C)(6), as authorizing the order in question. This argument is without merit. This section of the Discovery Code providing for protective orders grants the power to issue such orders to the court in which an action is pending or to a district court in the county in which a deposition is to be taken. This grant of authority refers to materials which have not yet been received as evidence in a proceeding. It clearly does not confer authority in this instance to interfere in a proceeding pending before a different tribunal.

The Attorney General, as counsel for respondent Commission, argues in support of the "protective order's" validity. In this argument the Attorney General appears to urge that the "protective order" is a valid exercise of the trial court's authority under the Uniform Declaratory Judgments Act.[7] The Attorney General has stated, in response to petitioner's application to this Court, that the controversy presented in the district court was real and that it involved high stakes. This assertion is premised on the proposition that those within the Commission responsible for the release of the requested information possibly would be subject to penalties no matter which way they acted on the request.

█ It is initially stated, in support of this argument, that Commission officials would be subject to a misdemeanor conviction if they refuse to release the information. This statement is without apparent merit. The provision dealing with violations of the Open Records Act, 51 O.S. Supp. 1985 § 24A.17, provides that anyone *willfully* violating the provisions governing release of information may be subject to such penalties. We do not find that members of the Commission intend, without cause, to knowingly withhold information required to be released under the Open Records Act. As long as the Commission is acting in good faith, which appears to be the case in this matter, such penalties would not be applicable.

█ The second prong to the argument the Attorney General presents is the assertion that Commission officials could be subject to removal from office if they released the information. This assertion is premised on the theory that the information has somehow become part of the records relating to an investigation being conducted by the Oklahoma State Bureau of Investigation and thus precluded from release by 74 O.S.Supp. 1985 § 150.5(D). This theory is also faulted. The statutes cited by the Attorney General, 3A O.S.Supp. 1985 § 203.3(C)(3) and 74 O.S.Supp. 1985 § 150.-5, do not provide that the Commission may initiate an O.S.B.I. investigation of horse

**5.** *Board of County Commissioners v. City of Norman,* 472 P.2d 910 (Okla.1970).

**6.** 12 O.S.Supp. 1982 §§ 3201 through 3214.

**7.** 12 O.S. 1981 §§ 1651 through 1657.

racing license applicants. In fact, 3A O.S. Supp. 1985 § 203.3(C)(1), clearly places the responsibility for such investigation upon the Law Enforcement Division of the Commission. The materials provided to us clearly indicate that the requested information was provided to this division of the Commission in conjunction with such an investigation. The Commission lacked the authority to in turn delegate this legislatively imposed responsibility to the O.S.B.I.

█ It is apparent that no real controversy existed in this matter between the Commission and Oklahoma Racing Associates so as to empower the district court to act under the Uniform Declaratory Judgments Act.[8] Additionally, 12 O.S. 1981 § 1657, specifically provides that the Declaratory Judgments Act is not applicable to orders, judgments or decrees of administrative agencies, boards or commissions of the State of Oklahoma. It would appear that this would also prevent the district court from acting to usurp the authority and responsibility of such commissions to act in the first instance.

The authority to determine the applicability of the Open Records Act to the requested materials has been initially placed by the Legislature in the public body which has possession of those materials. As respondent district judge was without original cognizance regarding this function, the attempt to do so under the guise of the "protective order" is void[9] and respondent district judge is prohibited from acting to enforce said order.

## II.

█ We next address petitioner's application for writ of mandamus directing respondent Commission to make the requested information available for public inspection. As has been often stated, a writ of mandamus is inappropriate in a situation where petitioner has a plain and adequate remedy in the ordinary course of law.[10] In

the present case petitioner has an application before respondent Commission seeking the release of the requested information under the Open Records Act. It is apparent from the materials before us that the Commission failed to act on that application as a result of the issuance of the void "protective order." That impediment has now been removed. Petitioner's remedy is now to pursue that application with the Commission.

However, in remanding this matter to the Commission for appropriate action we find it necessary to address the provisions of the Open Records Act providing for the exemption of certain materials. It has been suggested in supplemental briefs of the parties that this Court should promulgate guidelines to determine whether the information should be protected as confidential and commercial information furnished to the public body. The Open Records Act, on its face, does not provide for such an exemption.

The act does provide for some specific exemptions. Section 24A.7, provides for the confidentiality of certain personnel records where disclosure would constitute a clearly unwarranted invasion of personal privacy. Section 24A.8 provides that only certain records kept by law enforcement agencies shall be subject to disclosure. Section 24A.9 provides confidentiality for personal notes of a public official. Section 24A.10 applies to certain records the public release of which would give an unfair advantage to competitors or bidders. The identity of farmers and ranchers providing crop and livestock reports is granted confidential status by Section 24A.15. Section 24A.16 allows confidentiality to certain information relating to the identity of students in public educational institutions.

In addition to these clearly granted exemptions from disclosure the Open Records Act contains a general grant of confidentiality at 51 O.S.Supp. 1985 § 24A.5(1). This section provides:

---

8. See *Gordon v. Followell,* 391 P.2d 242 (Okla. 1964).

9. See *La Bellman v. Gleason & Sanders, Inc.,* 418 P.2d 949 (Okla.1966).

10. *Garner v. City of Tulsa,* 651 P.2d 1325 (Okla. 1982); *Martin v. Harrah Ind. School Dist.,* 543 P.2d 1370 (Okla.1975); *Reisinger v. Hurst,* 163 Okla. 92, 20 P.2d 1040 (1933).

This act does not apply to records specifically required by law to be kept confidential including:

a. records not discoverable under state law such as material prepared in anticipation of litigation or trial; or

b. records protected by a state evidentiary privilege such as the attorney-client and the identity of informer privileges; or

c. records of what transpired during meetings of a public body lawfully closed to the public such as executive sessions authorized under the Oklahoma Open Meeting Act.

Subsections (b) and (c) of this section clearly have operational referents and thus provide guidance to the public body required to act on a request for disclosure of records. Subsection (a) however fails to provide any such guidance. It appears to refer to material which would not be discoverable under operation of the Oklahoma Discovery Code as a matter of law. However, the scope of discovery under the code extends to "any matter, not privileged,[11] which is relevant to the subject matter involved in the pending action...."[12] Further, the very example given in Section 24A.5(1)(a) as a record not discoverable under state law is clearly discoverable under certain circumstances.[13] And clearly, the question of relevancy to a pending action has no application in the context of a request under the Open Records Act.

▪ What we are left with in Section 24A.5(1)(a) is a provision ambiguous in its application. When dealing with an ambiguous statute we must endeavor to arrive at and give effect to the legislative intent embodied in the legislation.[14] By reference to the other provisions of the Open Records

Act dealing with specific exemptions it is clear that the Legislature has intended to provide exemptions where the release of information possessed by a public body may be damaging to an individual. A parallel concern for the privacy of such information as it relates to individuals is given effect by the federal Privacy Act of 1974, 5 U.S.C. § 552a. This act provides a counterbalance to the federal Freedom of Information Act, 5 U.S.C. § 552, not present in Oklahoma statutes. However, such a balance is clearly necessary to protect the rights of both those furnishing information and those seeking its disclosure.

▪ In the Discovery Code provision is made for the protection of information which would be damaging to the commercial interests of a party involved. It is clear that the Legislature intended such protection to be applicable to the disclosure of information under the Open Records Act. Thus the guidelines set out in 12 O.S.Supp. 1982 § 3203(C), while not granting authority to the district court to interfere in a matter before a public body, may be considered by the public body in determining what materials may be exempted from disclosure or may be subject to deletion from other materials which are subject to disclosure.

▪ As previously stated, it is provided in the Open Records Act at 51 O.S.Supp. 1985 § 24A.17(B), that one whose request for disclosure of information is denied, in whole or in part, may bring an action in district court challenging this determination by the public body. However, it is also clear that a determination that information furnished by an individual should be re-

---

11. The concept of statutorily privileged material does provide guidance in the assesment of material exempt from disclosure and was clearly intended to be included in the reference in 51 O.S.Supp. 1985 § 24A.5(1)(a). The information covered by such statutory privileges is highly varied. See e.g. 63 O.S. 1981 § 1–738 applying to abortion reports; 63 O.S. 1981 §§ 2116 and 2139 dealing with information relating to treatment of alcoholism under the Oklahoma Alcohol Services Act; 10 O.S. 1981 § 57 relating to information in adoption proceedings; 74 O.S. 1981 § 932 covering files of members of the

Oklahoma Public Employees Retirement System.

12. 12 O.S.Supp. 1982 § 3203(B)(1).

13. See 12 O.S.Supp. 1982 § 3203(B)(2).

14. *Jackson v. Independent School Dist. No. 16,* 648 P.2d 26 (Okla.1982); *Lekan v. P & L Fire Protection Co.,* 609 P.2d 1289 (Okla.1980); *In re Big Cabin Creek Conservancy Dist. No. 1 of Craig County,* 382 P.2d 756 (Okla.1963).

leased might have an adverse effect on that individual's interest. In such an instance it is clear that such an individual would stand aggrieved and thereby also have standing to challenge the public body's determination under 24A.17(B), otherwise they would be denied equal access to the courts, Okla. Const., Art. 2, Section 6.

 In order that an individual whose interests are affected by a request for disclosure under the Open Records Act might effectively act to protect those interests it is necessary that such individual have notice of the request. In the context of the Open Records Act it would appear appropriate that such notice be given in writing to an individual that a request has been made concerning information furnished by the individual. This notice should inform the individual of an opportunity to present written objection to release of the information, to be filed with the public body within a reasonable time following notification. The individual must subsequently also be given notice of the determination made by the public body regarding the information request.

In ruling on a request for disclosure the public body and the reviewing court must consider that, pursuant to the intent of the Open Records Act, disclosure of information is to be favored over a finding of exemption.[15]

As was stated in the initial portion of this opinion, petitioner's remedy is now to pursue its application before the Commission. In the present case Oklahoma Racing Associates has been given notice of the request and has made known its objection to the release of the information requested. Pursuant to the responsibility imposed upon the Commission by the Legislature the Commission must rule as to whether this information or a segregable part of this information is to be disclosed. In making that ruling the Commission has now been furnished operational guidelines. Follow-

ing the Commission ruling either petitioner, or the individuals furnishing the requested information may appeal the decision to district court. As this procedure is viewed as an adequate remedy at law petitioner's request for writ of mandamus is denied.

### III.

Original jurisdiction ASSUMED. Writ of Prohibition ISSUED. Writ of Mandamus DENIED.

DOOLIN, V.C.J., HARGRAVE and WILSON, JJ., and HOWARD, S.J., concur.

SIMMS, C.J., concurs in result.

OPALA, J., HANSEN, S.J., concur in part, dissent in part.

HODGES, J., dissents.

KAUGER and SUMMERS, JJ., disqualified.

HOWARD and HANSEN, S.JJ., appointed in place of KAUGER and SUMMERS, JJ. who disqualified.

---

15. In this regard we find federal precedent concerning Freedom of Information Act proceedings to be persuasive. In any proceeding the party urging the exemption of materials from disclosure will have the burden of proof to show the applicability of such an exemption. See e.g. *National Parks and Conservation Asso. v. Morton,* 498 F.2d 765 (D.C.Cir.1974); *Black Hills Alliance v. United States Forest Service,* 603 F.Supp. 117 (W.D.S.D.1984).