2007 OK CIV APP 127

**PROGRESSIVE INDEPENDENCE, INC., Plaintiff/Appellee,**

v.

**OKLAHOMA STATE DEPARTMENT OF HEALTH, Defendant/Appellant.**

No. 104,528.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 24, 2007.

James Engstrand, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Tom L. Cross, Oklahoma State Department of Health, Legal Division, Oklahoma City, Oklahoma, for Defendant/Appellant.

## OPINION

ADAMS, Judge.

¶ 1 In this declaratory judgment action filed by Progressive Independence, Inc. (Progressive), the Oklahoma State Department of Health (OSDH) appeals a trial court order granting summary judgment in favor of Progressive and ordering OSDH to make available certain records requested by Progressive pursuant to the "Oklahoma Open Records Act" (the Act), 51 O.S.2001 § 24A.1, *et seq.* We conclude the presence of a disputed material fact precludes summary judgment in this case.

## THE OKLAHOMA OPEN RECORDS ACT

¶ 2 The Act provides that "[a]ll records of public bodies and public officials shall be open to any person for inspection, copying, and/or mechanical reproduction during regular business hours." 51 O.S.2001 § 24A.5. "Record" is defined by the Act as "all documents ... regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property." 51 O.S.Supp.2004 § 24A.3 (1). The Act *"does not apply* to records specifically *required by law* to be kept *confidential,"* 51 O.S.2001 § 24A.5 (1), however, "[a]ny reasonably segregable portion of a record containing *exempt* material *shall be provided after deletion* of the exempt portions." 51 O.S.2001 § 24A.5 (2). (Emphasis added.)

¶ 3 The purpose of the Act is "to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power." 51 O.S.2001 § 24A.2. Each public body subject to the Act is responsible for making records available to the public. *See* 51 O.S.2001 § 24A.5 (5).

¶ 4 Unless a record falls within a statutorily prescribed exemption in the Act, the record must be made available for public inspection. *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City,* 2003 OK 65, 73 P.3d 871. "Any person denied access to a record of a public body or public official may bring a civil suit for declarative and/or injunctive relief." 51 O.S.2001 § 24A.17 (B). In ruling on a request for disclosure, the public body and the reviewing court must consider that, pursuant to the intent of the Act, disclosure of information is

to be favored over a finding of exemption. *Tulsa Tribune Company v. Oklahoma Horse Racing Commission*, 1986 OK 24, 735 P.2d 548.

## UNDERLYING ACTION

¶ 5 Progressive, a center for independent living serving persons with disabilities, filed its declaratory judgment action under the Act, alleging OSDH had refused to disclose "agency records, consisting of data that [OSDH] is required to collect as part of [Oklahoma's] duties to ensure quality services for nursing facility residents under the medical assistance ('Medicaid') program."[1] In its prayer for relief, Progressive requested, *inter alia*, an order declaring OSDH's "refusal and failure to provide requested records is unlawful" and making "the records

available to [Progressive], with suitable provision for effecting any *deletions* of *exempt* personal identifier data ... that preserves connections between records of the same individual."[2] (Emphasis added.)

¶ 6 OSDH filed an answer, admitting the majority of Progressive's material allegations, denying those upon which it had insufficient knowledge, and specifically denying Progressive had a statutory right to the records.[3] It also raised several affirmative defenses, including confidentiality of records and illegality/imposition of additional record keeping duties for a non-public purpose in violation of 51 O.S.2001 § 24A.18.[4] Progressive completed discovery and moved for summary judgment, attaching evidentiary materials[5] to support what it contended are the elements of a *prima facie* case under the

1. In its petition, Progressive incorporated by reference the "full description" of the requested agency records from its July 7, 2004 Letter to OSDH, in which Progressive requested "copies of certain records that are collected and maintained by [OSDH] under Federal Medicaid and Medicare law and regulations," specifically "Resident Assessments (RAs)," also known as "Resident Assessment Instruments (RAIs)" or "Minimum Data Set (MDS)," and "Quarterly Reviews of residents of Oklahoma (Skilled) Nursing Facilities ... completed by Nursing Facilities after March 31, 2002 (Reviews)."

2. In its petition, Progressive did not explain its request to preserve "connections between the records of the same individual," however its July 7, 2004 letter specifically requested:

   such records after deleting in each record data or information that is "resident-identifiable" within the meaning of 42 C.F.R. § 483.315(i)(*l*) and (j), but preserving all the other substantive information about the individual.... The substantive information that should be preserved, because it can be relevant to the functional status of the resident ... includes age or date of birth, and date of admission and, if applicable, discharge. However, we would accept a redaction of date of birth to show only age or year of birth, if this is considered necessary to make the information not resident-identifiable.
   The redaction of name and other identifiers of the resident should not destroy the important link between the RA's and Reviews for that resident. Therefore *the response to this request should be organized so that RA's and Reviews for each resident are grouped together to show that they correspond to that individual. If grouping is considered too difficult, we propose that while redacting the name, etc., it is replaced*

*by a code number for each individual so that RA's and Reviews for him/her can be identified.* (Emphasis added.)

3. OSDH's Amended Answer reaffirmed and incorporated its Answer and denied its earlier admission that it "has possession and control of the records that [Progressive] seeks." Instead, OSDH admitted that it physically collects, via electronic means, and stores the records electronically in a computer (server) physically located in the building occupied by OSDH, but it does not have access to the records stored on the computer without the written consent of the systems manager of Center for Medicare and Medicaid Services (CMS).

4. OSDH also raised violation of Article 10, § 15 of the Oklahoma Constitution as an affirmative defense, claiming Progressive's preservation of connections request would require OSDH to spend resources benefitting Progressive's non-public purpose which would equal a prohibited gifting of the State's money to a person or business. Progressive addressed the issue in its summary judgment motion, arguing without supporting authority that Article 10, § 15 is "aimed at corrupt and favoritist deals that transfer the State's money or property to private parties" and that it "has never been held to bar the providing of services thought fit by the Legislature." OSDH did not respond to that argument in its brief opposing summary judgment and does not raise Article 10, § 15 as an issue in its Petition in error.

5. Progressive relied upon the exhibits it had attached to its petition, OSDH's answers and its responses to Progressive's two sets of interrogatories and request for production of documents.

Act[6] and addressing OSDH's "suggestions of exemptions" and affirmative defenses.

¶7 OSDH filed a brief opposing summary judgment and moved for summary judgment, arguing that deletion of the resident-identifiable information does not protect the confidentiality of the requested records under federal and state laws. After Progressive filed its reply and oral arguments were held, the trial court filed an order granting Progressive's summary judgment motion and denying OSDH's counter motion, specifically finding that OSDH had not established the applicability of any exemption under the Act or any federal laws and regulations, and ordering that "[OSDH] shall make the aforesaid records available to [Progressive], by means of an electronic copy in which personal identifiers are deleted from the records so that they are not resident-identifiable, *while preserving connections between records of the same individual.*" (Emphasis added.) OSDH's appeal followed.

## ANALYSIS

██ ¶8 As a preliminary matter, we address Progressive's summary judgment argument that "the [Act] precludes a public body from adding, in later litigation, to the reasons for denying access that it stated to the requester in the challenged initial determination." This argument is based on OSDH's response to Progressive's request for records, which merely explained the records were covered under various federal acts[7] and gave an address to which its request should be directed, whereas OSDH's affirmative defenses were based, in part, on numerous state and federal statutes and federal agency rules and regulations.

¶9 Progressive's sole authority for this argument is *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). The issue involved therein—whether the agency's actions in rejecting a mandatory airbag standard were arbitrary or capricious—clearly required assessment of the reasons the agency gave for doing so. That issue is neither addressed by the Act nor is the reasonableness of OSDH's actions an issue in this case. Progressive has not demonstrated that the Act or any other rule of law precludes OSDH from giving reasons other than it originally gave Progressive for denying access to its records.

¶10 The parties do not dispute that the computerized records requested by Progressive meet the definition of "record" in the Act or any other material facts relevant to Progressive's action relying upon the Act. Nor is there any dispute that the requested records contain "resident-identifiable" information,[8] which we assume, considering Progressive's petition and its request for OSDH, in part, *to delete* such information from the records, is "confidential" or "exempt" information under the Act.

██ ¶11 On appeal, OSDH argues the trial court *abused its discretion* when it ordered OSDH to comply with Progressive's request to "preserve connections between records of the same individual" after deleting the confidential information. According to OSDH, compliance with this request "requir(es) OSDH to create a unique record for

**6.** Relying on §§ 24A.3 and 24A.17(B) of the Act, Progressive argued that (1) it made a request for access to records of a public body, in this case, OSDH, (2) the records involved are created by, received by, under the authority of, or in the custody, control or possession of the OSDH, (3) the records involved otherwise meet the definition of "records" in the Act, *i.e.*, their custody or possession was in connection with the expenditure of public funds, and (4) OSDH denied access.

**7.** Responding to Progressive's July 7, 2004 Letter, OSDH stated the records "are covered under federal Privacy Act of 1974, the Health Insurance Portability and Accountability Act [HIPAA], and

the federal System of Records published in the Federal Register, Vol. 67, No. 20, Wednesday, February 13, 2002. Authority for this System is given under sections 1102(a), 1819(b)(3)(A), 1819(f), 1919(b)(3)(A), 1919(f), and 1864 of the Social Security Act."

**8.** The term used by the parties, "resident-identifiable," is neither specifically defined by either party nor by the federal statutes and regulations specifically cited by the parties. Considering the parties' summary judgment motions, responses, and evidentiary materials, "resident-identifiable" refers in part to a nursing home patient's name, age, and date of birth.

each individual and to insert that unique record into the resident assessment data prior to disseminating the information to Progressive in contradiction to the limitation provided in [51 O.S.2001 § 24A.18]." That section of the Act provides that "[e]xcept as may be required in [§ 24A.4] of this title, this act does not impose any additional record-keeping requirements on public bodies or public officials." [9]

¶ 12 However, when determining whether summary adjudication was appropriate, we examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and will affirm is there is no genuine issue as to any material fact and Progressive was entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to OSDH. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, 698 P.2d 17.

¶ 13 When addressing OSDH's affirmative defense based on § 24A.18, Progressive argues in its summary judgment motion that its request that personal identifiers be deleted results in *less* information than the raw record, not additional recordkeeping. It further argues that its request for "coded redaction," which it explains as "the replacement of actual names, etc., of the residents with some sort of coding—e.g. '1,' '2,' '3,'—so that the requester will still be able to arrange together (by computer means) the 'snapshots' of each individual over time," is *required* by the principle of § 24A.5(2).

¶ 14 The first part of Progressive's argument must fail because it is a bare assertion without any evidentiary support. Concerning the second part, Progressive does not dispute, by argument or evidentiary material, that its request requires OSDH to create a unique code and thus a new record for each resident. Progressive, as the moving party of the summary judgment motion sustained by the trial court, had the initial burden of showing that there is no substantial controversy as to any material fact. *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City,* 2003 OK 65, 73 P.3d 871. On this record, it has not done so.

¶ 15 Further, Progressive's remaining argument fails to consider that the last sentence of § 24A.2 of the Act, in which statute Oklahoma's public policy for the Act is expressed, provides "[e]xcept as may be required by other statutes, public bodies *do not need to follow any procedures* for providing access to public records *except those specifically required by the [Act]*." (Emphasis added.) As relevant to the issues here, the Act provides for either "inspection, copying, and/or mechanical reproduction," § 24A.5, *or* "deletion of the exempt portions," § 24A.5(2). Progressive has not demonstrated its request is limited thereto.

¶ 16 Because there remains a substantial controversy on the material issue of whether a new record would be created when deleting personal identifiers to make the records "not resident-identifiable," while preserving connections between records of the same individual," we must conclude the trial court erred in granting summary adjudication in favor of Progressive. Accordingly, its order is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED

JOPLIN, P.J., and MITCHELL, V.C.J., concur.

---

9. Section 24A.4 places on "every public body and public official" a duty "to keep and maintain complete records of the receipt and expenditure of any public funds reflecting all financial and business transactions relating thereto."