Question Submitted by: The Honorable Scott R. Biggs, Oklahoma State Representative, District 51
2017 OK AG 3
Decided: 05/23/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 3, __ __

 

¶0 This office has received your letter requesting an official Attorney General Opinion in which you ask, in effect, the following question:

Under 57 O.S.Supp.2016, § 37(E), the Department of Corrections is responsible for the costs of housing an inmate in county jail from the date the judgment and sentence is ordered by the court until the date the inmate is scheduled to be transferred to Department custody. However, if the Department does not receive the judgment and sentence within three (3) business days of it being ordered by the court, the Department is not responsible for any such costs until it receives the inmate's judgment and sentence paperwork. 
Does this statutory "three-day rule" violate the provisions of Article XXI, Section 1 and Article X, Section 9 of the Oklahoma Constitution, as recently interpreted by the Oklahoma Court of Civil Appeals in Board of County Commissioners of the County of Bryan v. Oklahoma Department of Corrections, 2015 OK CIV APP 86, 362 P.3d 241?
I. 

Introduction

¶1 Section 37 of Title 57 of the Oklahoma Statutes identifies certain procedures for the housing and transfer of criminal offenders from county jails into state custody. Section 37(B) requires the county to send the inmate's sentencing paperwork to the Department of Corrections ("Department") within three business days of it being ordered by the court:
B. No inmate may be received by a penal facility from a county jail without first scheduling a transfer with the Department. Within three (3) business days after the court orders the judgment and sentence, the county shall transmit to the Department by facsimile, electronic mail, or actual delivery a certified copy of:
1. The judgment and sentence certifying that the inmate is sentenced to the Department of Corrections;
2. A notice of judgment and sentence signed by the sentencing judge or court clerk. The notice shall include the name of the defendant, date of birth, case number, county of conviction, name of the sentencing judge, the crime(s) for which the defendant was convicted, the sentence(s) imposed, if multiple sentences whether the sentences run concurrently or consecutively, and whether the defendant is to receive credit for any time served. The notice of judgment and sentence shall be substantially in the form provided for in subsection F of this section; or

3. Plea paperwork, Summary of Facts and Sentence on Plea or Sentencing After Jury Trial Summary of Facts may be used as sentencing documents.
57 O.S.Supp.2016, § 37(B) (emphasis added). Once the Department receives the appropriate judgment and sentence paperwork, it will contact the county sheriff to "schedule the transfer and reception of the inmate into the Department." Id. § 37(C).
¶2 Section 37(E) of Title 57 establishes that the Department becomes financially responsible for certain inmate costs on the date the court orders the judgment and sentence.[1] Section 37(E) reads in pertinent part:
E. The Department will be responsible for the cost of housing the inmate in the county jail including costs of medical care provided from the date the judgment and sentence was ordered by the court until the date the inmate is scheduled to be transferred to the Department from the county jail . . . 
57 O.S.Supp.2016, § 37(E). Thus, from the time the court enters the judgment and sentence to the time the inmate is transferred into State custody, the Department bears the costs of housing the inmate. However, if the Department does not receive an inmate's sentencing documents from the county within three business days as required by Section 37(B), the Department is not required to pay the county for the costs of housing or medical care until such time as the Department receives the documentation.
. . . If an appropriate judgment and sentence document, as listed in [Section 37(B)], is not received by the Department within three (3) business days, the Department will not be responsible for the cost of housing the inmate in the county jail until the date the Department receives the necessary documentation. 

Id. For the purposes of this "three-day rule", the clock begins to run as soon as a defendant is sentenced by the court. Id. § 37(B).
¶3 Your question contemplates the interaction between Section 37 and two provisions of the Oklahoma Constitution, namely Article XXI, Section 1 and Article X, Section 9(a). Article XXI, Section 1 requires certain state-established institutions to be supported by the state: "Educational, reformatory, and penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the State in such manner as may be prescribed by law." Okla. Const. art. XXI, § 1 (emphasis added). Article X, Section 9(a) provides that "[n]o ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this state be used for State purposes." Ad valorem taxes levied by counties typically help fund various county entities, including the sheriff's office, which oversees and manages the county jail. 19 O.S.2011, § 513; 57 O.S.2011, §§ 41, 47.

II. DISCUSSION
A. The three-day rule of Section 37(E) violates Article XXI, Section 1 of the Oklahoma Constitution to the extent it requires a county to support a state penal institution. 
¶4 Article XXI, Section 1 of the Oklahoma Constitution provides that "penal institutions . . . shall be established and supported by the State in such a manner as may be prescribed by law." (emphasis added). It is well established that the use of "shall" connotes a behavior or action that is mandatory to the exclusion of any other alternative. Okla. Elec. Co-op., Inc. v. Okla. Gas & Elec. Co., 1999 OK 35, ¶ 9, 982 P.2d 512, 514. The State's obligation under Article XXI, Section 1 falls to the Department of Corrections, which oversees state penal institutions under the guidance of its Director and the Board of Corrections. 57 O.S.2011, §§ 504, 507.
¶5 As you recognize in your request, the Oklahoma Court of Civil Appeals recently analyzed the meaning of Article XXI, Section 1 as it applies to the apportionment of financial responsibility for the costs of housing state inmates at a county facility. See Bd. of Cty. Comm'rs of Cty. of Bryan v. Okla. Dep't of Corrections, 15 OK CIV APP 86, 362 P.3d 241 (hereafter, "Bryan County"). The issue in Bryan County was whether the maximum daily rate set by statute for the Department to compensate a county for housing state inmates was constitutional if that amount did not fully defray the county's costs. After reviewing cases addressing various Article XXI institutions and their sources of funding, see id., ¶¶ 16-19, 362 P.3d at 246, the Court concluded that the State has a duty to fund its state-created penal institutions, and that Article XXI, Section 1 is violated if even a small part of the institution is supported by county ad valorem funds. Id., ¶ 25, 362 P.3d at 247. Specifically, the Court stated that "Article 21 mandates that the State shall support the listed institutions, and the courts have consistently confirmed this interpretation as barring county support." Id., ¶ 23, 362 P.3d at 247. The Oklahoma Constitution thus requires the State alone to support state prisons, and no county funding shall be used.[2] 
¶6 Consistent with the court's reasoning in Bryan County, we conclude that, to the extent 57 O.S.Supp.2016, § 37(E) requires a county to bear the cost of housing an inmate after a judgment and sentence has ordered the inmate into State custody, the statute violates Article XXI, Section 1 of the Oklahoma Constitution.[3] 

B. The three-day rule in Title 57 O.S.Supp.2016, § 37(E) violates Article X, Section 9(a) of the Oklahoma Constitution if it requires county funds to be used for state purposes. 

¶7 As noted above, the three-day rule of Section 37(E) also implicates Article X, Section 9(a) of the Oklahoma Constitution, which prohibits county ad valorem taxes to be levied or used for state purposes. In Malibie, the Oklahoma Supreme Court reviewed an extensive history of cases in which the Court was faced with statutes that directly or indirectly utilized county tax revenues to fund state programs. See State ex rel. Dep't of Human Services v. Malibie, 1981 OK 18, ¶¶ 14-19, 630 P.2d at 244-246. The Court then determined that finding a violation of Article X, Section 9(a) hinged upon "whether county funds are being spent for a State, rather than a county, purpose." Id., ¶ 19, 630 P.2d at 316.
¶8 In Bryan County, the Court of Civil Appeals confronted the dispositive question before us: whether housing an inmate is a state purpose, and, if so, at what point does it become a state purpose. The Court answered this question directly, concluding that "[i]nmates are held in County facilities for a 'state purpose' on behalf of the state penal system after the date of judgment and sentence." Bryan County, 15 OK CIV APP 86, ¶ 35, 362 P.3d at 249 (emphasis added). Thus, "although the State does not incur any liability until a judgment and sentence is transmitted to DOC [according to Section 37], such liability is retroactive to the date the sentence was ordered by the court. After this date, DOC is responsible for the 'cost of housing' an inmate in the county jail." Id., ¶ 32, 362 P.3d at 249.
¶9 Under the three-day rule of Section 37(E), however, the Department would escape the retroactive liability described in Bryan County in cases where the Department does not receive an inmate's judgment and sentence paperwork within three days of it being ordered by the court. To the extent that such a scenario would force a county to use ad valorem revenues to cover the costs of housing the inmate after the judgment and sentence is ordered, that provision of Section 37(E) runs afoul of Article X, Section 9(a) of the Oklahoma Constitution. See Bryan County, 15 OK CIV APP 86, ¶ 35, 362 P.3d at 249 ("Statutory duties . . . cannot overcome the requirements of the Oklahoma Constitution or require unconstitutional actions.").
¶10 We recognize that, to some degree, these conclusions may put the Department in a difficult situation. For instance, if a county does not timely transmit the judgment and sentence to the Department as required by 57 O.S.Supp.2016, § 37(B), the Department may be left to bear the cost of housing an inmate in a county jail for an indeterminate amount of time simply for lack of notice that the inmate is eligible for transfer. To our knowledge, there is no mechanism to enforce a county's timely compliance with Section 37(B) aside from the cost-shifting function of Section 37(E)'s three-day rule. Moreover, Section 37 fails to specify which county officer is responsible for timely transmitting a judgment and sentence to the Department. To the extent there is a solution to such a scenario-be it an automatic notice procedure, a monetary incentive, or a fine or penalty-its consideration and enactment is uniquely within the province of the Legislature. Nevertheless, under the ruling in Bryan County, any such solution that requires county support of a penal institution, or the use of ad valorem revenues to cover the costs of housing inmates after the judgment and sentence is ordered, will be unconstitutional. See Bryan County, 15 OK CIV APP 86, ¶ 35, 362 P.3d at 249.

¶11 It is, therefore, the official Opinion of the Attorney General that: 
1. To the extent the three-day rule in 57 O.S.Supp.2016, § 37(E) requires a county to bear the cost of housing an inmate after a judgment and sentence has been ordered by the court, the statute violates Article XXI, Section 1 of the Oklahoma Constitution by requiring the county to support a state penal institution.
2. The housing of inmates in a county jail after judgment and sentence is ordered is a state purpose. See Bd. of Cty. Comm'rs of Cty. of Bryan v. Oklahoma Dept. of Corrections, 2015 OK CIV APP 86, 362 P.3d 241. Article X, Section 9(a) of the Oklahoma Constitution prohibits the use of ad valorem tax revenues for any state purposes. Accordingly, to the extent the three-day rule in 57 O.S.Supp.2016, § 37(E) requires a county to use ad valorem tax revenues to cover the costs of housing the inmate after the judgment and sentence is ordered, the statute violates Article X, Section 9(a) of the Oklahoma Constitution.
Mike Hunter
Attorney General Of Oklahoma
Lauren E. Hammonds
Assistant Attorney General

FOOTNOTES
[1] It should be noted that as part of a defendant's sentencing paperwork, he or she may elect to remain in county jail for ten days to assist his or her attorney with the filing of an appeal. Okla. Ct. Crim. App. R. 2.5. During these ten days, the Department is financially responsible for the inmate even if he or she is still housed in a county jail.
[2] To the extent one would argue that Article XXI, Section 1's concluding clause, "in such a manner as may be prescribed by law," provides the State some latitude to shift this financial responsibility to counties, that argument was rejected by the Oklahoma Supreme Court in Board of Commissioners of Logan County v. State ex rel. Short, 122 Okl. 268, 254 P. 710 (Okla. 1927), a conclusion later relied upon in State ex rel. Dep't of Human Services v. Malibie,1981 OK 18, 630 P.2d 310. The Court responded to this argument as follows: (Continued on next page)
Some contention is made that the words "in such manner as may be prescribed by law," at the close of article 21 of the Constitution, authorizes the enactment of the legislation under consideration. We see no merit in this contention. This phrase merely provides that the manner of supporting such institutions by the state may be prescribed by law. By no stretch of imagination can we see where it negatives the idea that such institutions are to be supported by the state. That support must come from the state, and the burden cannot be shifted, either directly or indirectly onto the shoulders of the counties.

State ex rel. Dep't of Human Servs. v. Malibie, 1981 OK 18, ¶10, 630 P.2d 310, 313 (quoting Bd. of Comm'rs of Logan Cty. v. State ex rel. Short, 122 Okl. 268, 254 P. at 712).
[3] An attorney general opinion that concludes an "act of the legislature is unconstitutional should be considered advisory only, and thus not binding until finally so determined by an action in the District Court of this state." State ex rel. York v. Turpen, 1984 OK 26, 681 P.2d 763, 767.

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2015 OK CIV APP 86, 362 P.3d 241, 
BD. OF COUNTY COMMISSIONERS OF COUNTY OF BRYAN v. OKLAHOMA DEPT. OF CORRECTIONS
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1981 OK 18, 630 P.2d 310, 
State ex rel. Dept. of Human Services v. Malibie
Discussed at Length

 
1927 OK 40, 254 P. 710, 122 Okla. 268, 
BOARD OF COM'RS OF LOGAN COUNTY v. STATE ex rel. SHORT
Discussed at Length

 
1999 OK 35, 982 P.2d 512, 70 OBJ 1366, 
Oklahoma Electric Cooperative, Inc. v. Oklahoma Gas and Electric Co.
Discussed

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 19. Counties and County Officers

 
Cite
Name
Level

 
19 O.S. 513, 
Sheriff to Have Charge and Custody of Jail
Cited

Title 57. Prisons and Reformatories

 
Cite
Name
Level

 
57 O.S. 37, 
Facilities Reaching Maximum Capacity
Discussed at Length

 
57 O.S. 41, 
Establishment or Access to Jail
Cited

 
57 O.S. 504, 
Board - Officers - Rules and Regulations - Compensation for Members - Powers and Duties
Cited