OSCN Found Document:Question Submitted by: The Honorable Glen Mulready, Insurance Commissioner, Oklahoma Insurance Dept.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Glen Mulready, Insurance Commissioner, Oklahoma Insurance Dept.
2023 OK AG 1
Decided: 03/01/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 1, __ __

 
¶0 This Office has received your request for an Official Attorney General Opinion in which you ask, in effect, the following questions:
1. When the Insurance Commissioner ("Commissioner") reaches a settlement agreement with a pharmacy benefits manager ("PBM"), prior to the filing of an administrative action, is the settlement agreement reached between the Commissioner and PBM considered a final order pursuant to 36 O.S.2021, § 6967(B)?
2. Is such a settlement agreement subject to production under the Open Records Act, 51 O.S.2021, § 24A.1 et seq., may it be obtained via subpoena or discovery, and is it admissible in evidence in any private civil action?
3. May the Commissioner keep such settlement agreement confidential and privileged pursuant to 36 O.S.2021, § 6967(A)?
4. If the answer to Questions 1 or 2 is yes, may the Commissioner and PBM agree by specific terms in the settlement agreement to keep the agreement confidential?
5. If the answer to Questions 1 or 2 is yes, may the Commissioner and PBM agree by specific terms in the settlement agreement to keep confidential the identity of a party to such a settlement agreement by using an alias or other alternative identifier?
I.
BACKGROUND
¶1 Beginning in 2014, the State of Oklahoma required licensure of pharmacy benefit managers ("PBMs") if they were to engage in pharmacy benefits management in the State.[1] 59 O.S.2021, § 358, 2014 Okla. Sess. Laws ch. 263, § 2. PBMs generally "facilitate the provision of prescription drug benefits to covered individuals . . . including negotiating pricing and other terms with drug manufacturers and providers." 59 O.S.2021, § 357(6). PBMs also fulfill tasks such as claims processing, payment of claims, formulary development and management, rebate management, patient compliance, substitution programs, and disease management programs. Id. § 357(6)(a--e). Subsequently in 2019, the Legislature enacted the Patient's Right to Pharmacy Choice Act ("Act"). The purpose of the Act is twofold: (1) "to establish minimum and uniform access to a provider," and (2) institute "standards and prohibitions on restrictions of a patient's right to choose a pharmacy provider." 36 O.S.2021, § 6959, 2019 Okla. Sess. Laws ch. 426, § 2.
¶2 In addition to other statutory powers and duties under Title 36, the Act vests the Insurance Commissioner ("Commissioner") with the power and authority to investigate PBMs for compliance with the Act. 36 O.S.2021, § 6965(A). The Act authorizes the Commissioner to receive and process complaints against PBMs and undertake disciplinary action against PBMs when necessary. Id. at §§ 6966(G), 6966.1. Prior to an administrative action being filed, the Commissioner may "approve and sign settlement[s]" with a PBM to resolve the charges against it. 36 O.S.2021, § 6966(C). If the Commissioner and PBM do not reach a settlement, the Commissioner institutes an administrative action through the filing of a statement of charges and notice of hearing against the PBM, and the matter goes to hearing before the Patient's Right to Pharmacy Choice Commission ("Commission"). 36 O.S.2021, § 6966(G--H). All hearings are "held in accordance with, and governed by, Sections 250 through 323 of Title 75 of the Oklahoma Statutes," or the Administrative Procedures Act. Id. § 6966(I).
¶3 Through this opinion, the Office addresses whether a settlement agreement is a final order and subject to production under the Act, the Open Records Act ("ORA"), or other applicable state law.
II.
DISCUSSION.
¶4 From the outset, the Office notes that three statutes converge to the conclusions reached in this opinion: first, the Act; second, the ORA; and third, the Administrative Procedures Act ("APA"). For the reasons set forth below, the Office concludes as follows: (1) settlement agreements reached under the Act do not constitute final orders; (2) settlement agreements under the Act and in general are public records and are subject to ORA requests and potentially subject to subpoenas, discovery, and admission as evidence in litigation; (3) neither a public body nor a public official may, without judicial oversight, stipulate to the confidentiality of otherwise public records; (4) Okla. Stat. tit. 36, § 6967(A) is inapplicable as it relates to settlement agreements; and (5) nothing in the plain language of the Act, ORA, or APA allows for a public body or official to keep confidential the identity of a party in a settlement agreement through the use of an alias or alternative identifier.
A. A final settlement agreement between the Commissioner and a PBM is not a final order.
¶5 You first ask whether a final settlement agreement between the Commissioner and a PBM constitutes a final order. According to 75 O.S.2021, § 250.3(8), a "final agency order" is an order that "includes findings of fact and conclusions of law pursuant to Section 312 of [the] title, is dispositive of an individual proceeding unless there is a request for rehearing, reopening, or reconsideration pursuant to Section 317 of this title and which is subject to judicial review." (emphasis added). Moreover, like the Act, the APA allows for "informal disposition [which] may be made of any individual proceeding by stipulation, agreed settlement, consent order, or default." 75 O.S.2021, § 309(E).
¶6 While 36 O.S.2021, § 6966(C) may authorize the Commissioner to enter into settlement agreements to dispose of a matter prior to hearing, nothing in § 6966 prescribes the form of such agreement. Specifically, there is no requirement for a settlement agreement to contain findings of fact and conclusions of law, which are required for a document to qualify as a final order. Furthermore, the execution of a settlement agreement by the Commissioner and a PBM may obviate the need for judicial review. As a result, the plain reading of 36 O.S.2021, § 6966 distinguishes between settlement agreements, which are entered into before a notice of hearing and statement of charges are filed, and final orders, which follow a hearing before the Commission. Accordingly, settlement agreements are not final orders.
B. A settlement agreement reached between the Commissioner and a PBM is subject to production under the ORA. It is also potentially subject to a subpoena, discovery, and it may be admissible in evidence in any private civil action.
¶7 You next ask whether a settlement agreement between the Commissioner and a PBM is subject to the ORA, whether it is also subject to a subpoena or discovery, and whether it is admissible in evidence in a private civil action. In short, the answer is yes. Settlement agreements are documents created in the transaction of public business. Accordingly, they are open records under the ORA.
¶8 Fundamentally, settlement agreements are public records. The key questions are whether they are open to disclosure under the ORA or through a subpoena or discovery, and whether they may be admissible in a private civil action. Oklahoma's public policy concerning public records, as set forth in the ORA, provides, "[T]he people are vested with the inherent right to know and be fully informed about their government." 51 O.S.2021, § 24A.2. The ORA further protects the public's right to access and review government records "so they may efficiently and intelligently exercise their inherent political power." Id. A "record" under the ORA refers to:
[A]ll documents including, but not limited to . . . other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property." 
51 O.S.Supp.2022, § 24A.3(1) (emphasis added). A settlement agreement, such as the one discussed here, is a document "created by" either a public official or public body "in connection with the transaction of public business." Id. And so long as a settlement agreement is a record, the ORA mandates that it "shall be open to any person for inspection, copying, or mechanical reproduction . . . ." 51 O.S.2021, § 24A.5.
¶9 Although the ORA's general rule is to mandate access to public records, it does acknowledge and provide for certain instances when a public body may keep specific records confidential as required by law or to protect an important privacy interest. 51 O.S.2021, §§ 24A.2, 24A.5(1). For example, § 24A.2 observes that "specific state or federal statutes [may] create a confidential privilege." Id. § 24A.2. Moreover, § 24A.5(1) cites to a number of types of records that a public body must maintain as confidential. These records span the gamut from records protected by an evidentiary privilege to personal information in driving records to licensure examination test forms. However, because no state or federal law mandates that the Commission keep these settlement agreements confidential, and no provision of the ORA would permissively allow a public body or official to keep a settlement agreement confidential, settlement agreements are open records. Thus, they are potentially disclosable through an open records request, subpoena, and discovery, and they may be admissible in a private cause of action.[2]
C. Subsection A of § 6967 of the Act is not applicable to settlement agreements. 
¶10 You next ask whether the Commissioner may keep such a settlement agreement confidential and privileged pursuant to 36 O.S.2021, § 6967(A). This provision states:
Documents, evidence, materials, records, reports, complaints or other information in the possession or control of the Insurance Department or the Right to Pharmacy Choice Commission that are obtained by, created by or disclosed to the Insurance Commissioner, Pharmacy Choice Commission or any other person in the course of an evaluation, examination, investigation or review made pursuant to the provisions of the Patient's Right to Pharmacy Choice Act, the Pharmacy Integrity Audit Act or Sections 357 through 360 of Title 59 of the Oklahoma Statutes shall be confidential by law and privileged, shall not be subject to open records request, shall not be subject to subpoena and shall not be subject to discovery or admissible in evidence in any private civil action if obtained from the Insurance Commissioner, the Pharmacy Choice Commissioner or any employees or representatives of the Insurance Commissioner. 
36 O.S.2021, § 6967(A). Therefore, for § 6967(A) to be applicable to a settlement agreement, such an agreement would have to be related to the Commissioner's evaluation, examination, investigation, or review of a PBM. Moreover, under the same subsection, the settlement agreement would need to be "obtained by, created by or disclosed to" the Commissioner "in the course of" any of those above instances. Id. A final settlement agreement, by its nature, does not occur during the "course of" an evaluation, examination, investigation, or review. Rather, it, follows any evaluation, examination, investigation, or review. As a result, a settlement agreement falls outside the categories of items, documents, or records contemplated by § 6967(A).
¶11 Further, while the Commissioner possesses authority under the Oklahoma Administrative Code to enter into voluntary agreements, such agreements are "matters of public record." OAC 365:1-3-10. Where the Legislature seeks to remove state-held materials from production or disclosure, it explicitly includes that bar in the statute, and a court will not construe a statute to add provisions the Legislature refused to add. Multiple Inj. Tr. Fund v. Mackey, 2017 OK 75, 406 P.3d 564. Thus, Section 6967(A) does not apply to settlement agreements. Therefore, it does not operate to keep settlement agreements confidential and privileged from disclosure under the Act.
D. The Commissioner and a PBM may not, by agreement, keep a settlement agreement confidential.
¶12 Your fourth question inquires whether the Commissioner and a PBM may agree to keep the settlement agreement confidential. As an initial matter, Section B, above, sets forth the general rule. Section 24A.5 of the ORA commands: "All records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction . . . ." 51 O.S.2021, § 24A.5. Reviewing the text of the Act, ORA, and APA, there is no language that authorizes parties to, by agreement, remove otherwise open records from public access. Two Oklahoma appellate cases confirm that, absent legislative authorization, public officials cannot agree to remove public records from public access.
¶13 First, in Ross v. City of Owasso, the Court of Civil Appeals decried a city's attempt to keep a public document out of the public domain. Specifically, the City and its outgoing city manager agreed to non-disparagement and confidentiality clauses in a separation agreement. 2017 OK CIV APP 4, 389 P.3d 396. The court held:
We reject the argument that any "non-disclosure" or "non-disparagement" agreement between the City and the City Manager controls what must be released pursuant to an ORA request. The purpose of the Act to "advance the public's interest in assuring that the government is properly performing its function" would be undermined if public bodies could withhold material otherwise subject to disclosure based on a contractual agreement between the public body and an individual. To be sure, many individuals and public bodies would prefer their dealings to be kept secret, even though the Act may require them to be disclosed. To allow public bodies to "contract around" the Act would eviscerate the legislative intent. We find that the City cannot refuse to release the Report on the grounds of any "non-disparagement" or confidentiality agreement.
Id. ¶ 8, 389 P.3d at 399 (Emphasis in original) (Footnote omitted).
¶14 Second, the Oklahoma Supreme Court in State ex rel. Okla. State Bd. of Med. Licensure and Supervision v. Rivero further affirmed that parties cannot stipulate to the confidentiality of a public document in a public proceeding. 2021 OK 31, 489 P.3d 36. In Rivero, the court declared that a stipulated protective order related to the record of an administrative proceeding was void as a matter of public policy under the ORA. Id. ¶ 91, 489 P.3d at 69. The court explained, "When a court record is turned into a confidential record, an agreement by parties to request confidentiality as to a public court record is not without statutory limits due to the Open Records Act." Id. at ¶ 76, 489 P.3d at 63. The court underscored that a lower court must "utilize[e] the least restrictive means for achieving confidentiality, and making the scope of confidentiality narrowly tailored so that only the portions of the record subject to confidentiality are sealed and the remainder of the record is kept open." Id. As a result, the court concluded that a "stipulated protective order making 'all documents' in the administrative proceeding as subject to the order and prohibiting their use in any other legal proceeding is contrary to public policy expressed in the Oklahoma Open Records Act and the Oklahoma Discovery Code." Id. ¶ 91, 489 P.3d at 69.
¶15 In conclusion, Ross makes clear that parties cannot simply "contract around" the ORA. Ross, ¶ 8, 389 P.3d at 399. Further, consistent with Rivero, parties generally cannot stipulate to make public records related to an administrative proceeding confidential and not subject to the Oklahoma Records Act without court approval. Rivero, 2021 OK 31, ¶ 91, 489 P.3d at 69. Therefore, the Commissioner may not keep a settlement agreement confidential by agreement of the parties. Allowing for such an agreement would undermine the Open Records Act.
E. The Commissioner and a PBM may not, by agreement, keep the identity of a party to a final settlement agreement confidential through the use of an alias or alternative identifier. 
¶16 Finally, you ask whether the Commissioner and a PBM may agree to keep the identity of a party to a settlement agreement confidential by using an alias or alternative identifier. As observed in Section D, nothing in the Act, ORA, or the APA authorizes the parties to agree to keep otherwise publicly available documents confidential. Likewise, no language in the Act, ORA, or APA authorizes the "masking" of a settling party's identity through an alias or alternative identifier. The Oklahoma Open Records Act explicitly addresses any concerns regarding privacy:
The privacy interests of individuals are adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the statutes which authorize, create or require the records. Except where specific state or federal statutes create a confidential privilege, persons who submit information to public bodies have no right to keep this information from public access nor reasonable expectation that this information will be kept from public access[.]
51 O.S.2021, § 24A.2. Thus, either the Commissioner or the PBM must have some statutory basis or exception for keeping the settlement agreement as a whole or in part confidential. Without any existing statutory basis or exception, on the balance, the ORA's provisions have adequately contemplated and protected any privacy interests of the Commissioner and the PBM. Accordingly, there is no right to keep this particular information from the public.
¶17 Moreover, the Court of Civil Appeals has noted that portions of a court record should only be made confidential if "a compelling privacy interest exists which outweighs the public's interest in the record." In re the Marriage of Mitchell, 2021 OK CIV APP 17, ¶ 28, 491 P.3d 759, 765 (emphasis in original) (citing 51 O.S.2011,§ 24A.30). Although a settlement agreement reached pursuant to 36 O.S.2021, § 6966 may not be a court record, the rule is persuasive here. Making select portions of the settlement agreements confidential is allowable only when "a compelling privacy interest exists which outweighs the public's interest in the record." Id. Nothing in the Act or the ORA protects the identity of the parties in a settlement agreement reached by the Commissioner and a PBM. Therefore, just as the ORA requires court approval to make an open record confidential, court approval must also precede any removal of portions of an open record.[3]
¶18 In the event that any information in the settlement agreement would necessarily need to be protected from disclosure, the ORA allows for a public body or official to produce "reasonably segregable portions of a record containing exempt material . . . after deletion of the exempt portions[.]"
[4] 51 O.S.2021, § 24A.5(3). Therefore, the "remedy" for protecting confidential information, including identities, is through deletion of the exempt material (redaction), not fabricating new names or unique identifiers. Here, redaction is not appropriate. As noted above, nothing in the Act, the ORA, or the APA allows for the masking of a settling party's identity through an alias or unique identifier. Therefore, the Commissioner and PBM may not, by agreement, keep the identity of a party to a settlement agreement reached pursuant to the Act confidential by using an alias or alternative identifier.
¶19 It is, therefore, the official Opinion of the Attorney General that:

1. A settlement agreement reached by the Commissioner and a PBM does not constitute a final order under 

36 O.S.2021, § 6967(B).
2. A settlement agreement reached by the Commissioner and a PBM is subject to an ORA request, subpoena, and discovery, and it may be admissible in evidence in any private civil action.
3. Subsection A of § 6967 does not apply to a settlement agreement and may not be used to keep confidential and privileged such agreement.
4. The Commissioner and PBM may not, by agreement, keep a settlement agreement confidential.
5. The Commissioner and PBM may not, by agreement, keep the identity of a party to a settlement agreement confidential through the use of an alias or alternative identifier.
 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
THOMAS R. SCHNEIDER
DEPUTY GENERAL COUNSEL
FOOTNOTES
[1] Under the Act, a "pharmacy benefit manager" is "a person that performs pharmacy benefits management and any other person acting for such person under a contractual or employment relationship in the performance of pharmacy benefits management for a managed-care company, nonprofit hospital, medical service organization, insurance company, third-party payor or a health program administered by a department of this state[.]" 36 O.S.2021, § 6960(4).
[2] Under certain circumstances, settlement agreements may also serve as documentation of the expenditure or receipt of public funds, which the ORA expressly requires to be maintained. 51 O.S.2021, § 24A.4.
[3] Court approval will not be available to the Commissioner and PBM when negotiating and finalizing a settlement agreement under § 6966.
[4] Examples of exempt material include: (1) records privileged pursuant to a statutory evidentiary privilege; (2) minutes of executive sessions; (3) certain driver information in driver records; (4) information in the files of the Office of the Chief Medical Examiner; (5) social security numbers; (6) test forms, question banks, answer keys developed for licensure examinations administered by state occupational licensing bodies; (7) certain student records; and (8) health records. 51 O.S. 2021, § 24A.5(1); 51 O.S. 2021, § 24A.16(A)(1); and 76 O.S.2021, § 19 or 45 C.F.R. § 165.402(a) (2021).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2017 OK CIV APP 4, 389 P.3d 396, 
ROSS v. CITY OF OWASSO
Discussed

 
2021 OK CIV APP 17, 491 P.3d 759, 
IN RE THE MARRIAGE OF MITCHELL
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2017 OK 75, 406 P.3d 564, 
MULTIPLE INJURY TRUST FUND v. MACKEY
Discussed

 
2021 OK 31, 489 P.3d 36, 
STATE ex rel. OKLA. STATE BD. OF MEDICAL LICENSURE AND SUPERVISION v. RIVERO
Discussed at Length

Title 36. Insurance

 
Cite
Name
Level

 
36 O.S. 6959, 
Purpose
Cited

 
36 O.S. 6960, 
Definitions
Cited

 
36 O.S. 6965, 
Power and Authority to Examine and Investigate - Files and Records - Inquiry - Third Party Consultants
Cited

 
36 O.S. 6966, 
Pharmacy Choice Commission - Complaints - Hearings
Discussed at Length

 
36 O.S. 6967, 
Confidentiality
Discussed at Length

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 24A.16, 
Confidential Records of Public Educational Institutions - Statistical and Directory Information - Release or Sale of Information Prohibited
Cited

 
51 O.S. 24A.3, 
Definitions
Cited

 
51 O.S. 24A.30, 
Court Records - Authority of the Court to Seal a Record
Cited

 
51 O.S. 24A.1, 
Short Title
Cited

 
51 O.S. 24A.2, 
Political Power - Public Policy and Purpose of Act
Discussed at Length

 
51 O.S. 24A.4, 
Duty to Keep and Maintain Complete Records of Receipt and Expenditure of Funds
Cited

 
51 O.S. 24A.5, 
Open and Confidential Records
Discussed at Length

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 357, 
Definitions
Cited

 
59 O.S. 358, 
License to Provide Pharmacy Benefits Management - Powers of Oklahoma Insurance Department
Cited

Title 75. Statutes and Reports

 
Cite
Name
Level

 
75 O.S. 250.3, 
Definitions
Cited

 
75 O.S. 309, 
Individual Proceedings - Notice - Hearing
Cited

Title 76. Torts

 
Cite
Name
Level

 
76 O.S. 19, 
Access to Medical Records - Copies - Waiver of Privilege
Cited